O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DC COMICS, | ) | Case No. CV 15-07980 DDP (JPRx) |
| Plaintiff, | ) | **ORDER DENYING MOTION TO DISMISS** |
| v. | ) | [Dkt. No. 25] |
| MAD ENGINE, INC., | ) | |
| Defendant. | ) | |

Presently before the Court is Defendant Mad Engine's Motion to Dismiss. (Dkt. No. 25.) After considering the parties' submissions and hearing oral argument, the Court adopts the following Order.

**I. BACKGROUND**

Plaintiff DC Comics is a publisher of comic books and owner of related intellectual property. (Compl. ¶¶ 1, 9.) In this case, Plaintiff is asserting its trademark rights in its Superman character — specifically, the iconic shield design that Superman wears on his chest. (Id. ¶ 10-14.) As provided by Plaintiff's complaint, "one well-known iteration of the design" is:



1    As the complaint provides, "[o]ne of the indicia most strongly
2 associated with Superman is the red and yellow five-sided shield
3 that appears on Superman's chest." (Id. ¶ 10.)  Plaintiff has
4 registered a trademark in this shield design for adults' and
5 children's clothing, including t-shirts.  (Id. Ex. 1 (U.S.
6 Trademark No. 1,184,881).)  Plaintiff has also licensed this mark
7 on t-shirts, with the complaint providing examples:

15 As shown above, some of the licensed products are more humorous and
16 some are more traditional.  Plaintiff alleges that it "has achieved
17 great commercial success with the goods and services offered under
18 the Shield Mark." (Id. ¶ 16.)
19    Defendant Mad Engine is a clothing wholesaler.  (Id. ¶ 20.)
20 Defendant sold a shirt that allegedly violated Plaintiff's Superman
21 shield trademark.  (Id. ¶ 2, 21-23.)  The shirt at issue has a
22 five-sided shield design on the chest with the text "DAD" inside:



1    According to Plaintiff, "DC Comic's Shield Design consists of
2 a bordered five-sided shield in red and yellow, with the text
3 inside the shield sized and positioned according to the proportions
4 and shape of the shield" and Defendant's t-shirt "incorporates each
5 of these elements."  (Id. ¶ 24.)  Plaintiff alleges that it sent
6 Defendant a cease and desist letter on June 1, 2015, but Defendant
7 failed to respond until June 19, 2015, because Defendant wanted the
8 shirt to sell during the Father's Day sales period.  (Id. ¶ 28.)
9 Defendant refused to cease sales, even after a second cease and
10 desist letter.  (Id. ¶ 29.)

11    Thus, Plaintiff has filed the current lawsuit, alleging
12 federal trademark infringement and counterfeiting under 15 U.S.C. §
13 1114, unfair competition and false designation of origin under 15
14 U.S.C. § 1125, trademark dilution under 15 U.S.C. § 1125, and state
15 law unfair competition under California Business and Professions
16 Code section 17200 et seq.  (See Compl.)  Defendant has filed a
17 Motion to Dismiss, arguing that its t-shirt is a parody of
18 Plaintiff's mark so the shirt does not infringe or dilute
19 Plaintiff's mark.  (See Def. Mot. Dismiss, Dkt. No. 25.)

20 **II.  LEGAL STANDARD**

21    A 12(b)(6) motion to dismiss requires a court to determine the
22 sufficiency of the plaintiff's complaint and whether it contains a
23 "short and plain statement of the claim showing that the pleader is
24 entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under Rule
25 12(b)(6), a court must (1) construe the complaint in the light most
26 favorable to the plaintiff, and (2) accept all well-pleaded factual
27 allegations as true, as well as all reasonable inferences to be
28 drawn from them.  See Sprewell v. Golden State Warriors, 266 F.3d

3

979, 988 (9th Cir. 2001), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001); Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).

In order to survive a 12(b)(6) motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Dismissal is proper if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008); see also Twombly, 550 U.S. at 561-63 (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief).

A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).

///
///

4

**III. DISCUSSION**

Defendant argues that its "DAD" shield image on a Father's Day novelty t-shirt is a parody of Plaintiff's Superman shield and therefore not likely to confuse consumers as to the source or affiliation of its product. (See Mot. Dismiss at 6-9.) Defendant also claims that this lack of consumer confusion is true under a full Sleekcraft analysis. (Id. at 10-18.) Defendant further argues that there is no trademark dilution here because the two shields are dissimilar and because parodies do not dilute as a matter of law. (Id. at 19-22.) Lastly, Defendant claims that the state law unfair competition claim should be dismissed for the same reasons that support dismissing the trademark claims. (Id. at 22-23.)

In response, Plaintiff argues first that Defendant has failed to treat its motion to dismiss as a true motion to dismiss because Defendant has introduced new facts not alleged in the complaint and fails to accept the well-pled facts in the complaint as true. (Opp'n at 4-7.) Plaintiff claims that its complaint adequately alleges facts that, taken as true, support all of its claims. (Id. at 7-21.) For the argument regarding likelihood of confusion, Plaintiff argues that Defendant's motion relies on facts and allegations from outside the complaint, which should not be considered on a motion to dismiss, and that the facts in the complaint satisfy a Sleekcraft factor analysis. (Id. at 7-8; n9-15.) Further, Plaintiff argues that Defendant's use of its mark is not a parody at all for purposes of likelihood of confusion and dilution. (Id. at 16-21.)

///

**A. Parody**

Defendant's arguments in its motion rely heavily on its claim that its shield is a parody of Plaintiff's Superman mark. (See Mot. Dismiss at 6-9.) Defendant states:

> Mad Engine's DAD Image is an obvious parody of Superman and his Shield, commenting on the real-world futility and even pretentiousness of Superman and his Shield. Whereas Superman proudly bears the Shield on his chest as he flies around saving people in a fantasy world, "DAD" lacks any superpowers, but is a real-world hero to his kids. Superman wears a cape and uses superhuman strength to stop trains and catch airplanes, while your real-world DAD wears a t-shirt and sometimes helps do the dishes. This comment by Mad Engine and its DAD Image on the undue self-importance of Superman and his fictionalized superhero powers *does* achieve the effect of ridicule, though only through a simple turn of phrase.

(Id. at 6.)

The Ninth Circuit has examined how parodies affect trademark infringement claims by explaining that such an argument is a part of the usual consumer confusion analysis, and that the underlying question is whether there is such consumer confusion:

> In a traditional trademark infringement suit founded on the likelihood of confusion rationale, the claim of parody is not really a separate "defense" as such, but merely a way of phrasing the traditional response that customers are not likely to be confused as to the source, sponsorship or approval. "Some parodies will constitute an infringement, some will not. But the cry of 'parody!' does not magically fend off otherwise legitimate claims of trademark infringement or dilution. There are confusing parodies and non-confusing parodies. All they have in common is an attempt at humor through the use of someone else's trademark. A non-infringing parody is merely amusing, not confusing."

Dr. Suess Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1405 (9th Cir. 1997) (internal citations omitted).

A parody pokes fun at the senior mark, like "Chewy Vuiton" dog toys parodying Louis Vuitton's luxury mark, or "Lardashe" jeans parodying Jordache jeans. See Louis Vuitton Malletier S.A. v.

6

1  Haute Diggity Dog, LLC, 507 F.3d 252 (4th Cir. 2007); Jordache
2  Enters., Inc. v. Hogg Wyld, Ltd., 828 F.2d 1482 (10th Cir. 1987).
3  By contrast, a motorcycle repair shop that was not licensed by
4  Harley Davidson but which used a logo substantially similar to
5  Harley Davidson's mark was found to not be a parody because it made
6  "no comment on Harley's mark; it simply use[d] it somewhat
7  humorously to promote [its] own product and services, which is not
8  a permitted trademark parody use." Harley Davidson, Inc. v.
9  Grottanelli, 164 F.3d 806, 813 (2d Cir. 1999).

10     Here, Defendant claims that putting "DAD" into a superhero
11 shield is making fun of Superman by pointing out Superman's "undue
12 self-importance." (Mot. Dismiss at 6.) However, it is unclear
13 from the briefing and the complaint if there is a true parody here,
14 like in the Louis Vuitton and Jordache cases, or if there is
15 instead a somewhat humorous use that confuses consumers as to the
16 source of the product, as in Harley Davidson.

17     Defendant argued in its brief and at oral argument that in
18 Toho Co. v. Sears, Roebuck & Co., 645 F.2d 788 (9th Cir. 1981), the
19 Ninth Circuit found on a motion to dismiss that a "humorous
20 caricature" of a famous mark was not confusing to consumers as a
21 matter of law. The plaintiff in that case owned the name
22 "Godzilla" and the related character, "a fictitious, gigantic,
23 green, lizard-like monster." Id. at 789. The plaintiff also used
24 the slogan "King of the Monsters" in relation to its mark. Id.
25 The name and likeness was licensed on merchandise such as comic
26 books, coloring books, toys, games, TV shows, and movies. Id. at
27 789-90. By contrast, the defendant sold "garbage bags in boxes
28 which designate[d] the bags as a Sears product, but which also

7

display[ed] the word 'Bagzilla,' depict[ed] a 'comic, helpful, personified reptilian creature,' and carr[ied] the legend 'Monstrously Strong Bags.'" Id. at 790.

The Ninth Circuit held that the marks at issue in the case were unrelated as a matter of law after applying the Sleekcraft factors. Id. The court found that the marketing channels were different, as well as the actual goods at issue:

> Sears sells garbage bags. Toho produces or sponsors only literary works and toys. Sears uses "BAGZILLA" instead of "GODZILLA" and puts the Sears name prominently on the package. The representation of the creature is a humorous caricature rather than an exact copy.

Id. Lastly, the court found that Sears did not intend to confuse consumers and instead intended "only to make a pun." Id. at 791. Thus, after a consideration of all the factors, the court held that there was no evidence that consumers would be "confused as to source or sponsorship of the garbage bags." Id.

Unlike in Toho, the alleged infringing product here does not contain a prominent indication that the shirt comes from the defendant rather than the plaintiff. That is, in Toho, Sears had its name and mark prominently displayed on the garbage bags. Here, by contrast, Mad Engine does not have a prominent indication that the t-shirt is from it and not from the creator and licensor of Superman. Further, the shields here are the same except for the text reading "DAD" and "S," which conjures up "Superdad" and "Superman" respectively. This is unlike Toho, where there were different creatures on the box and in the film, although the name of "Bagzilla" did conjure up the trademarked "Godzilla."

Perhaps most importantly, the plaintiff and defendant had different products and marketing channels in Toho. There, the

8

plaintiff did not license or produce garbage bags, or use any of the same marketing to promote their products. Here, Plaintiff has made many different iterations of licensed Superman t-shirts, including one that makes the same inference that Defendant's shirt makes: Superdad. The marketing channels and goods are therefore not unrelated as a matter of law. Thus, the holding in Toho does not change the Court's holding here.

Defendant also argues that this Court has previously held that a complaint did not state a claim for trademark infringement at the motion to dismiss stage, citing Burnett v. Twentieth Century Fox Film Corp., 491 F. Supp. 2d 962 (C.D. Cal. 2007). However, the facts of Burnett are dissimilar to the facts of this case. Burnett involved the animated TV show, "Family Guy," making a parody of Carol Burnett's "Charwoman" character. Id. at 966. As the decision states, "Family Guy routinely puts cartoon versions of celebrities in awkward, ridiculous, and absurd situations in order to lampoon and parody those public figures and to poke fun at society's general fascination with celebrity and pop culture." Id. at 966-67. This Court held that due to the expressive nature of the allegedly infringing TV show and based on the "distasteful and bizarre, even outrageous and offensive" way the clip lampooned the Charwoman character, no reasonable consumer would be confused or think anything of the clip other than that Carol Burnett was the subject of a Family Guy parody. See id. at 973.

The situation in Burnett was quite different than the case here. Here, the allegedly infringing t-shirt makes the same joke as a shirt licensed by Plaintiff: both shirts refer to "Superdad" through the use of the Superman shield or something like it. There

9

1 is no lampooning of Superman by making a play on "Superman" with
2 "Superdad." Defendant's shirt is saying something like, "My dad is
3 like Superman — he's Superdad." Thus, as in Harley Davidson,
4 Defendant's shirt is more like a humorous use to promote the t-
5 shirt's sales rather than a parody of Superman.

### B.  Sleekcraft Factors Analysis

Defendant argues that the shield design on its t-shirt is substantially different from Plaintiff's trademark, and that the other Sleekcraft factors support the claim that consumers would not be confused as to the origin of the products. (Mot. Dismiss at 10-18.) Defendant states that the "S" in Plaintiff's mark is the dominant feature of the mark, and Defendant's mark uses "DAD" with no "S," so the dominant parts of the mark are dissimilar. (Id. at 13.)

In AMF Inc. v. Sleekcraft Boats, the Ninth Circuit provided eight nonexclusive factors for a court to use in determining whether consumer confusion is likely. 599 F.2d 341, 348-49 (9th Cir. 1979). These factors are: (1) the strength of the plaintiff's mark; (2) the proximity or relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) the type of goods and likely degree of purchaser care; (7)defendant's intent in selecting the mark; (8) likelihood of expansion of the product lines. Id.

The similarity of the marks is arguably the most important of these factors because "[w]here the two marks are entirely dissimilar, there is no likelihood of confusion." See Brookfield Commc'ns, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1054 (9th Cir. 1999). Of course, similarity — even "precise identity" — does

not equate with consumer confusion, which is the ultimate test, but similarity combined with the other factors is a good indicia of such confusion. Id.; Sleekcraft, 599 F.2d at 351.

### 1. Similarity of the Marks

Here, the complaint alleges that there is substantial similarity between the two marks and that this similarity leads to consumer confusion. (See Compl. ¶¶ 23-27, 32, 37-39.) The complaint's allegations and a visual inspection of the two marks demonstrates the similarities, which are sufficient to allow Plaintiff's complaint to survive a motion to dismiss:

 

Both shields are five-sided shapes, bordered in red, with red lettering inside on a yellow background, and with the lettering designed to fit in the shape. A consumer, as Plaintiff alleges, could easily think that the same company that makes or licenses shirts with the symbol on the right made or licensed the shirt with the symbol on the left. Even without the red, yellow, and blue colors — Plaintiff's registered trademark is black and white, as shown below — the two marks have similar five-sided shapes and text that fits the shape, as well as a border and similar font for the text in the shape:



Therefore, the Court holds that Plaintiff has properly alleged consumer confusion based on the similarity of the two shields so as to survive a motion to dismiss. The Court will examine the other <u>Sleekcraft</u> factors below as they also support the denial of Defendant's motion.

**2. Strength of Plaintiff's Mark**

It is undisputed that Plaintiff's mark is very strong. (Mot. Dismiss at 14-15; Opp'n at 9-10.)

**3. Proximity of the Goods**

While defendant claims that Plaintiff's complaint fails to plead any facts regarding the proximity of the goods, Plaintiff responds that the goods are "identical" and thus there is a high degree of consumer confusion as to this factor. (Mot. Dismiss at 15; Opp'n at 10-11.)

**4. Evidence of Actual Confusion**

Both parties acknowledge that there is no evidence of actual consumer confusion. (Mot. Dismiss at 15; Opp'n at 9 n.5.) However, as Plaintiff points out, such evidence is likely to come during discovery and not at this early stage, but the complaint did plead consumer confusion. (Opp'n at 9 n.5.)

**5. Marketing Channels Used**

The parties do not contest for the purposes of this motion that they use the same marketing channels. (Mot. Dismiss at 15; Opp'n at 14.)

**6. Type of Goods and Likely Degree of Consumer Care**

The type of goods here are t-shirts, and both parties produce t-shirts with shield designs in the center. Plaintiff does not offer argument as to the likely degree of consumer care in making

12

this kind of purchase, and there are no facts pled in the complaint regarding this factor. Plaintiff explains that the necessary evidence, such as the price of Defendant's shirt, would come during discovery. (Opp'n at 9 n.5.) Defendant claims that Plaintiff's failure to plead facts regarding the likely degree of care means this factor is neutral in this case. (Mot. Dismiss at 15-16.)

### 7. Defendant's Intent

Plaintiff argues that the complaint "alleges that Defendant's conduct was willful and done with the intent to trade off the fame of Plaintiff's iconic Superman character and Shield Mark and to falsely convey to consumers that the infringing t-shirt was a licensed DC Comics product. (Opp'n at 14 (citing Compl. ¶¶ 23, 26.)) Defendant argues that its intent is, as argued above, to make a parody of Superman. (Mot. Dismiss at 16.) Further, Defendant argues that its use of the shield is "ornamental" and not a trademark use. (Id.)

### 8. Likelihood of Expansion of Products

The parties do not contest this factor, as they both offer the same product. (Mot. Dismiss at 18; Opp'n at 9 n.5.)

### 9. Balance of Factors

The balance of these factors weighs in favor of Plaintiff at the motion to dismiss stage because all the well-pled facts in the complaint must be taken as true and Plaintiff has alleged sufficient facts to support consumer confusion under a Sleekcraft factor analysis. The two shields are substantially similar and are on the same kind of product, a t-shirt, and use the same marketing channels. As pled, consumers are likely to be confused and believe that Defendant's "DAD" shirt was a licensed, humorous take by DC

13

Comics on its own mark. Therefore, the Sleekcraft factors do not weigh in favor of dismissing the complaint at this stage.

### C. Dilution and Unfair Competition

Because the Court finds the marks are substantially similar and the parody argument insufficient at this stage of the case, the Court also finds that the complaint has properly alleged both its dilution and unfair competition causes of action based on the same underlying facts.

## IV. CONCLUSION

For the reasons stated above, Defendant Mad Engine's Motion to Dismiss is DENIED.

IT IS SO ORDERED.

Dated: December 15, 2015

HON. DEAN D. PREGERSON
United States District Judge